## THOMAS McQUADE v. GEORGE F. EMMONS.

1. Where one employed as a workman by the month, occupying a tenement of the employer, having its use as part remuneration for his services—his holding possession of such tenement after the term of service is ended, does not give jurisdiction to a justice of the peace to remove him, under the act concerning landlords and tenants.

2. The relation between the parties is that of master and servant, not of landlord and tenant.

3. The right of occupancy ends with the service, and the employer may remove the incumbent without suit.

4. After *certiorari* to remove the judgment and proceedings of a justice of the peace is presented to him, any further proceeding in the matter by him is a contempt of the court allowing the writ.

5. Order of restitution denied the plaintiff, who was removed from the premises by warrant issued after *certiorari*, because he was without color of right to possession.

On *certiorari* to bring up the proceedings of a justice of the peace, under the act concerning landlords and tenants. *Rev.*, *p.* 422.

Argued at the February Term, 1876, before Justices DEPUE, DIXON and KNAPP.

For the plaintiff, *Lytle.*

For the defendant, *J. F. Hageman.*

The opinion of the court was delivered by

KNAPP, J. The writ of *certiorari* in this case was directed to Hezekiah Mount, Esq., one of the justices of the peace of the county of Mercer, and brings up proceedings had before him ostensibly under the act concerning landlords and tenants.

The defendant, Emmons, claiming certain premises situate in Princeton, and in the occupancy of Thomas McQuade, instituted proceedings before said justice to dispossess McQuade as a tenant under him, whose term had expired, and who held over after such expiration.

Several reasons are assigned by the plaintiff, directed against the jurisdiction of the justice, for the reversal of these proceedings. The first two reasons respect the question whether the plaintiff's possession of the premises was, under the facts disclosed in the preliminary affidavit, a tenancy. If the facts appearing in the affidavit filed with the justice fail to show that these parties held to each other the relation of landlord and tenant, in respect to the premises from which McQuade was sought by these proceedings to be evicted, then it is clear that the justice had no jurisdiction of the subject matter, and the proceedings must be set aside as being under color of the act, merely, and not in pursuance of its provisions. *Stanley* v. *Horner*, 4 *Zab.* 511 ; *Fowler* v. *Roe*, 1 *Dutcher* 549 ; *Schuyler* v. *Trefren*, 2 *Ib.* 213.

It appears from the affidavit that the plaintiff, McQuade, was employed by the defendant, Emmons, by the month ; that as compensation for the services to be rendered by McQuade, he was to receive from the defendant $25 a month, and the use of a house for himself and his family, so long as he might work for the defendant in an acceptable manner ;

that under this agreement the plaintiff went into the occupancy of the house in question, the same being the tenant-house standing and being upon the property owned by the defendant, known as Edge Hill, on Stockton street, in the borough of Princeton, and engaged in the service of the defendant; that he continued in such service and occupancy until the defendant becoming dissatisfied with the plaintiff, discharged him from his employment, whereupon the plaintiff quitted his service, but refused to leave the house at the defendant's bidding. It was admitted in the argument that the tenant-house so described was on lands upon which the defendant resided, and of which he was in actual possession during all the time of the plaintiff's employment. Under the contract set forth, McQuade was not the tenant of Emmons, nor could he be proceeded against, or claim to be treated as a tenant. The agreement shows their relation to have been that of master and servant, and not of landlord and tenant. The occupation of the house by McQuade and his family was part of his compensation for the performance of his engagement with the defendant; it does not show any demise of the house; the possession of McQuade was the possession of his employer, and when he was dismissed from service, and the legal relation existing between them thereby put an end to, his right of occupancy was ended, and his longer remaining on the premises of his master was a trespass. *The King* v. *Stock*, 2 *Taunt.* 339; *Guest* v. *Updycke*, 2 *Vroom* 553; *Hughes* v. *Derry*, 9 *C. & P.* 495; *State, Edgar, pros.,* v. *Jewell*, 5 *Vroom* 260. "Many servants," says Mansfield, Chief Justice, in *King* v. *Stock*, "have houses given them to live in, as porters at park gates. If a master turns away his servant, does it follow that he cannot evict him till the end of the year?" And in the same case Lord Ellenborough asks, "if a man assigns to his coachman the rooms over his stable, does he thereby make him his tenant?" It is abundantly clear that the claimant, by his own showing, makes no case of which the justice could take cognizance under the act concerning landlords and tenants.

These proceedings were unnecessarily invoked, and used in the performance of the office of turning such a holder out of possession of the property. While it is true that the right of McQuade to the longer occupation of the property was ended, his removal could be accomplished by the act of the owner, without the aid of any judicial tribunal.

The proceedings before the justice must be set aside, with costs.

A third reason assigned for the reversal of these proceedings is, that no summons was issued in conformity with the act. The objection urged against it being that the summons failed to describe the premises sufficiently for identification, and with the same fulness of description as that contained in the affidavit.

The thirteenth section of the act requires that, upon the affidavit being filed, the justice shall issue a summons describing the premises of which possession is claimed, &c. An examination of the summons shows an insufficient description of the premises. If that had been the only objection to the proceedings in this case, these proceedings could not have been set aside, for the reason that the alleged tenant, as appears by the record of the justice, appeared to the suit and proceeded therein, without making objection to the summons. An appearance to the suit and proceeding to trial, without raising such objection before the justice, would be regarded as a waiver of it. *Cook* v. *Hendrickson,* 1 *Penn.* 343; *Martin* v. *Steele,* 2 *Ib.* 718; *Foulkes* v. *Young,* 1 *Zab.* 438; *Steward* v. *Sears,* 7 *Vroom* 174, and cases cited.

During the pendency of the proceedings under this writ of *certiorari,* a rule was granted by this court, on the application of McQuade, requiring Hezekiah Mount, the justice to whom the writ of *certiorari* was directed, and John S. Voorhies, a constable, to show cause before this court why an attachment should not issue against them for their contempt in that, after the writ of *certiorari* was allowed in this case and presented to the justice, the said justice issued a warrant for the dispossession of McQuade, and the said constable executed it by

McQuade v. Emmons.

removing the plaintiff from the premises ; and, at the same time, it was ordered that the defendant, Emmons, show cause why he should not make immediate restitution of the premises so delivered to him under the warrant of removal.   By direction of the court, the argument upon these rules was heard at the same time as the argument upon *certiorari*. Testimony was taken under the rule to show cause, and it discloses the fact that the writ of *certiorari* was presented to the justice on the 21st day of December, 1875 ; and on the 23d day of the same month, the warrant for dispossession was issued.   A writ of *supersedeas* was also sued out by the plaintiff, but does not appear to have been served upon any one, certainly not upon the constable.   It does not appear that when the warrant was directed to the constable, and when he executed it, he had any knowledge or notice of the issuing of any *certiorari*, and the writ of *supersedeas* not having been served upon him, he, in executing the warrant, the command of which he was bound to obey, in the absence of higher or other authority to the contrary, cannot place him in contempt. The warrant having been issued by the justice, and directed to the constable, he was bound to obey it, and to execute it, unless restrained from so doing by the order or process of this court.   No such order or process having been served upon him, his proceeding under the warrant is purged of any contempt.

The case of the justice is different.   The writ of *certiorari* directed to him had been presented to him.   This writ, of itself, operates as a *supersedeas*.   After having received formal notice of its issue, no further act could lawfully be done, or proceeding had by him in the matter removed by the writ. All proceedings, subsequent to the notice formally given to him of its issue, were absolutely null and void.   *McWilliams v. King & Phillips*, 3 *Vroom* 21.

It follows, therefore, that the action of the justice in the issuance of this warrant, was plainly in contempt of the authority of this court.   The justice had conceived the idea that a bond was required of the plaintiff in *certiorari*, before

the writ could properly issue; and upon ascertaining that no such bond had been given, he considered himself at liberty to disregard the writ. And there is evidence to show that encouragement was given to this idea by the advice and opinion of counsel upon whose judgment he relied. But this cannot excuse him. He knew that the writ was issued by superior authority, and his duty was to render unquestioning obedience to its command. He did not do that, but of his own authority proceeded to execute the judgment which the *certiorari* had removed from his control. By doing so, he contemned the authority of this court, and so it must be adjudged against him. In the evidence taken under the rule to show cause, the justice testified, and disclaimed any purpose on his part in doing what he did to disregard, or in any way fail in his obedience to mandate of this court; he explains it as being the result of an error of judgment that he fell into while making an honest effort to discover what was his duty in the premises. I am persuaded, from the testimony, that the justice is not chargeable with any flagrant purpose to disregard the process of this court, and that an adequate punishment for the contempt of which he was guilty, will be inflicted by compelling him to pay the costs of the proceedings against him in the matter; and such will be the order of the court.

So far as respects the proceedings against Emmons for restitution of the property to McQuade, an order for which would have been made, had it appeared that any rights of McQuade respecting this property had been violated by his dispossession, the circumstances disclosed in this case satisfy the court that restitution to him of that house should not be ordered. His presence there at the time he was removed, was that of a trespasser, and Emmons had the right, with or without the aid of an officer, to turn him out of possession. We think injustice would be done by an exercise of the power of this court to place him again in possession of the premises to which he had no color of right, and from which, so far as Emmons is concerned, he was rightfully ejected.

The rule to show cause as to him, must be discharged, but without costs, as against the plaintiff in *certiorari*.